**A. & B. SALES CORPORATION,**
Plaintiff,

v.

**Samuel GOLDMAN, Jerry Goldman and Martin Goldman, individually, and as co-partners doing business under the firm name and style of Sal Metal Products Company, Defendants.**

Civ. A. No. 11244.

United States District Court
E. D. New York.

Aug. 30, 1955.

Zola A. Aronson, New York City, for plaintiff.

Arthur I. Singer, New York City, for defendants.

ABRUZZO, District Judge.

This action was instituted by the plaintiff to recover from the defendants the sum of $6,298.15 paid to the United States Government for manufacturers' excise taxes. 26 U.S.C.A. § 3403(c).

The three individual defendants are co-partners doing business under the firm name and style of Sal Metal Products Company. All transactions by the plaintiff with the defendants were had with the defendant, Samuel Goldman, who represented the other individual defendants. All of these defendants will hereinafter be referred to as the defendant.

## Plaintiff's Facts

A chronological survey of the plaintiff's claim reveals that prior to June, 1946, the plaintiff, a New Jersey corporation, purchased automobile jacks from a Regal Tool & Machine Company of Newark, New Jersey, which maintained quarters in the same premises with the plaintiff. Regal never charged the plaintiff with the manufacturers' excise tax. Regal became bankrupt. In June, 1946, Apel and Budlong, president and vice president of the plaintiff, met with Samuel Goldman at his office in Brooklyn, New York, and discussed the manufacture of automobile jacks by the defendant for the plaintiff. They agreed on a price of $2.50 per jack, plus the manufacturers' excise tax of 5 per cent to be paid by the plaintiff and which was to be billed as a separate item. Plaintiff claims that at this meeting it was agreed that if the plaintiff could procure a ruling from the Internal Revenue Service that the jacks were not taxable items, the defendant would procure a refund of the tax and would return it to the plaintiff.

In November, 1946, the defendant purchased the tools, machinery and equipment of Regal. Further negotiations were held between the plaintiff and Goldman which led to an agreement evidenced by a letter dated January 14, 1947, (Plaintiff's Exhibit 1) which reads as follows:

"National Distributors

"A & B Sales Corporation
"39–53 Long Avenue Hillside, N. J.
"Telephone Elizabeth 2–9323–4
"January 14, 1947

"Sal Metal Products Co.
"120 Freeman St.
"Brooklyn 22, N. Y.
"Attention Mr. Sam Goldman

"Dear Mr. Goldman:

"In reply to your letter of January 13, 1947, with reference to the price of Jacks that you are to supply us with, we hereby confirm the price of $2.50 per Jack complete, plus a 5% Federal excise tax, terms less 2% 10th proximo, excluding excise tax. "Under our contract with the Regal Tool & Mfg. Co., Inc., the taxes were absorbed by them, but we understand that your policy is to pass the tax on to the distributor, which we agree to.

"With kindest personal regards,

"Yours very truly,

"A & B Sales Corporation
"(Signed) S. S. Budlong
"S. S. Budlong, President"

SSB:ad

A minute quantity of jacks were delivered by the defendant in 1946. After this letter was forwarded by the plaintiff the defendant began the delivery of the jacks in quantities. On September 22, 1947, the defendant increased the price to $2.60 per jack, plus tax. The jacks were all resold by the plaintiff to Sears Roebuck & Company at $3 per jack, even after the price was increased. This $3 re-sale price was based on the original cost of $2.50 per jack and in figuring its mark-up the plaintiff claims it did not include the tax in the sale or re-sale price because it expected to recover the tax from the Government. The total cost of the jacks delivered by the defendant and paid for by the plaintiff, inclusive of tax, was $136,627.45 of which $6,298.15 represented the tax paid by the plaintiff.

In January, 1947, the plaintiff retained the New Jersey law firm of Gutkin & Beck. They specialized in matters pertaining to federal taxation. On October 18, 1949, the Treasury Department ruled that automobile jacks were not taxable.

Beck, a witness for the plaintiff, testified that on October 27, 1949, a direct application was made by the plaintiff for a refund of taxes on jacks bought from Regal, the defendant's predecessor. He further testified that it was abated ten months later, to wit, July 25, 1950. The Government made a refund on those

jacks; the amount apparently was small. In that particular case, the plaintiff was able to make the application for refund directly, but in the instant case as the defendant paid the tax it was necessary for the defendant to make the application for a refund. It might be observed here that while Beck testified he obtained a refund direct on July 25, 1950. some ten months later, plaintiff's proof stopped at that point. If the Government had in fact sent a check for this refund it would seem to me that some other proof corroborating the verbal proof of Beck would have been offered as this proof might be a very essential factor.

On January 6, 1950, a letter was sent on the letterhead of Sydney A. Gutkin, a member of the firm of Gutkin & Beck, addressed to Sal Metal Products Company, which reads in part as follows (Plaintiff's Exhibit 10):

"We are in receipt of a ruling signed by the Deputy Commissioner of Internal Revenue, dated October 18, 1949, Bureau symbols MT:ST: DAS, to the effect that the taxability of such jacks has been reconsidered and it is now held that jacks of such type and size are not taxable. Accordingly, any tax heretofore paid with respect thereto is refundable if the taxpayer establishes that he has not passed the tax on to his customers as a separate item nor included it in his selling price, or, if he has passed the tax on to his customers or included it in his selling price, that he has either refunded the amount of the tax to the ultimate purchasers or has received the written consents of such ultimate purchasers to the allowance of the fund.

" * * * Inasmuch as the same was not payable, we should appreciate your going into the matter as expeditiously as possible and arranging to refund to A and B Sales Corporation the total amount of $6,298.-15, which was erroneously collected by you from that company."

After this letter was sent, Beck claimed he telephoned Goldman and requested that he come to Beck's office and sign a form for the refund of the taxes. He made several telephone calls to Goldman thereafter requesting that Goldman come to his office but Goldman never came. On October 9, 1950, Beck, personally, visited Goldman at his office in Brooklyn, bringing with him a completed Refund Form 843 and asked Goldman to sign it but Goldman refused. Beck contended that Goldman refused to sign because another lawsuit instituted by Goldman against the plaintiff had been settled for an amount substantially smaller than the amount involved in the suit and he would not cooperate unless the plaintiff agreed to give him 50 per cent of any refund recovered by plaintiff.

In November, 1950, the instant action was commenced. On January 9, 1951, Form 843 was signed by Goldman on behalf of Sal Metal Products Company, and on January 11, 1951, it was filed with the Collector of Internal Revenue in Brooklyn.

Beck testified that he went to Washington, D. C., in December, 1951, and had a conference with R. J. Bopp, Deputy Commissioner of Internal Revenue in charge of miscellaneous tax accounts. Commissioner Bopp advised him that all matters were being held in abeyance because of an anticipated ruling declaring that automobile jacks were subject to tax. On February 18, 1952, such a ruling was passed by the Internal Revenue Service and plaintiff was so advised by a letter dated March 25, 1952.

At the trial Beck contended that if the claim for refund had been filed in October, 1950, it would have been paid within one year. However, in answer to a question propounded by the Court he stated that it sometimes took the Government five years to process a claim for tax refund.

The witness Lans, a New York attorney specializing in corporate and tax work and called as a witness on behalf of the plaintiff, testified that taxes were refunded in eight to twelve months.

## Defendant's Facts

Goldman testified on behalf of the defendants. He received the letter of January 6, 1950. Telephone calls were made to Goldman with respect to this refund. He was ready at all times to discuss the obtaining of the refund.

On October 9, 1950, Beck for the first time visited him with prepared forms and schedules that Beck asked him to sign. He told Beck to leave the forms so that he could check the figures and give it to his attorney for approval, but Beck informed him that he could not do so. Goldman denied that he asked Beck for 50 per cent of any refund but requested that his attorney's fee be paid for the legal work involved.

In January, 1951, Goldman signed the form for refund which was given to him by his (Goldman's) attorney.

In determining liability it is important to note the various dates testified to. Reference will be made to the evidence most favorable to the plaintiff.

There is no dispute that the letter of January 6, 1950 (Exhibit 10), was sent and received. After January 6, 1950, Beck did telephone Goldman at various times for action on this refund. Subsequently, on October 9, 1950, Beck, representing the plaintiff, visited Goldman, the defendant, with a completed Refund Form 843 and asked Goldman to affix his signature to it. He did not sign it. He wanted time to check the refund form. Beck did not leave the form but took it with him.

The next month, November, 1950, this action was commenced. On January 11, 1951, two months later, the defendant signed Refund Form 843. Apparently this was done at the advice of the defendant's attorney.

Beck, in December, 1951, visited Bopp, Deputy Commissioner of Internal Revenue, with respect to this refund. He was told that all refunds with respect to jacks were held in abeyance as an adverse ruling was about to be made that jacks were subject to a tax, but there is nothing in the testimony to show for how long a period of time prior to December, 1951, refunds with respect to automobile jacks were held in abeyance. The issue is, therefore, somewhat narrowed and substantially the issue to be determined is whether plaintiff would have procured a refund if Refund Form 843 had been signed on October 9, 1950, by the defendant, instead of January 11, 1951, three months later.

There are some obvious answers. It must be borne in mind that between January, 1950, when the tax on jacks was lifted, and October 9, 1950, the plaintiff did not fulfil its obligation to obtain this refund. It was its duty to follow the trail speedily, prepare necessary forms, and give the defendant ample opportunity to check and sign them. When this refund form was presented for signature to the defendant on October 9, 1950, the defendant was not obliged either by a written agreement or any oral agreement to make application for a refund. It was his duty only to assist the plaintiff.

Because these refunds were frozen sometime prior to December, 1951, it is impossible for the Court to fix liability in favor of the plaintiff and against the defendant because of the lapse of three months from the date of the presentation of the refund form for signature in October, 1950, and the actual signing in January, 1951. The Court finds nothing in the evidence to indicate that a lapse of three months in any way affected this refund. In corroboration of this the Court refers to Beck's testimony (Tr. 73–74):

"The Court: We have had many cases here where the refunds do not come until five or six years later.

"The Witness: That is correct, sir.

"The Court: Now, I have to take some notice of the fact that I know that situation can exist.

"The Witness: Right, sir.

"The Court: If I am right in my assumption that sometimes it takes

the Government three or four or five years—

"The Witness: You are right.

"The Court: Then the fifteen months' delay would not be too important, would it?

"The Witness: No."

A finding for the plaintiff would, therefore, wholly depend upon the testimony of an expert witness, attorney Lans, who testified that in his opinion taxes of this type were refunded in eight to twelve months but he failed to give any specific case in which an automobile jack tax refund had been made. Apart from his testimony the case is void of any evidence that any refunds of taxes on jacks were made between the dates of October 9, 1950, and December, 1951.

The plaintiff having the burden of proof has not sustained that burden. For these reasons a decree must be entered in favor of the defendant.

Present findings of fact, conclusions of law and a decree in accordance with this opinion.